**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

**BRENDAN LINEHAN SHANNON**　　　　　　　　　　　　　**824 N. MARKET STREET**
**CHIEF JUDGE**　　　　　　　　　　　　　　　　　　　　**WILMINGTON, DELAWARE**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**(302) 252-2915**

May 16, 2018

Christopher J. Isaac, Esq.　　　　　　　　　Kristi J. Doughty, Esq.
DOROSHOW, PASQUALE, KRAWITZ &　　　　MCCABE, WEISBERG & CONWAY
BHAYA　　　　　　　　　　　　　　　　　　1407 Foulk Road
1202 Kirkwood Highway　　　　　　　　　　Suite 204
Wilmington, DE 19805　　　　　　　　　　　Foulkstone Plaza
　　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19803
*Attorneys for the Debtor*

　　　　　　　　　　　　　　　　　　　　　*Attorney for Ally Financial Inc.*

　　　　Re:　　In re: Deborah K. Burton
　　　　　　　　<u>Case No. 17-10979 (BLS)</u>

Dear Counsel:

　　　　The matter before the Court is Ally Financial's (hereinafter "Ally") Objection to confirmation of the Debtor's Amended Chapter 13 Plan [Docket No. 11]. The issues center on the appropriate valuation methodology and interest rate determination for a car in which Ally holds a security interest.

　　　　Specifically, Ally holds a perfected security interest in a 2013 Ford Fusion that the Debtor purchased and currently possesses. The Debtor originally proposed a plan that would pay Ally $7,800 plus interest at 5% for a total of $8,832. Ally objected to that plan, arguing that the NADA retail value for the vehicle, which totaled $14,250, should be used instead [Docket No. 11]. The Debtor subsequently filed an amended plan, which proposed to pay Ally $8,100 for its secured claim at 5% interest, for a total of $9,171.35 [Docket No. 13]. Ally again objects to that plan.

　　　　*1. Valuation*

　　　　The parties have provided competing valuation reports for the Court's consideration. Ally presented a detailed NADA valuation report that values the vehicle at $11,105. That figure accounts for a $1,450 high mileage deduction and a $1,255 increase for the vehicle's leather seats, power sunroof, and fog lights. In contrast, the Debtor obtained an appraisal

Christopher J. Isaac, Esq.
Kristi J. Doughty, Esquire
May 16, 2018
Page 2

conducted by a car salesman that asserts that the value of the car is $5,000. It accounted for a heavy smoke smell in the interior, a burn hole in the headliner, and $400 worth of damage to the passenger side door. The appraisal listed an anticipated cost of $800 for reconditioning. The Debtor's appraisal report includes a voucher good for purchase of the vehicle submitted by the car dealership to the Debtor in the amount of $5,000.

Ally argues that its report is more accurate and better supported because it is based on a NADA report and it accounts for multiple adjustments. Ally contends that the Debtor's report is not credible because it lacks specificity and does not appear to list the retail value – reflecting instead the trade-in value – which has been held by the Supreme Court to be the appropriate metric in these circumstances. *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953 (1997). As to the damage to the car described in Debtor's appraisal, Ally asserts there was no damage at the time of its appraisal, so any damage must have happened after.

The Debtor contends that her appraisal report was performed by an expert in the field of car sales, making it superior to Ally's. Further, Ally's report does not account for the poor condition of the interior and exterior of the car. The Debtor then argues that *Rash* does not necessarily state that the exclusive standard for vehicle valuation is retail. Rather, it is replacement value, or "the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Rash*, 520 U.S. at 960. And, as noted in footnote six of *Rash*, that standard could be retail, wholesale, or some other value based on the specific facts of the case.

After review, the Court concludes that Ally's NADA report is more reliable and persuasive. First, the Court notes that the Debtor bears the burden of proof in a § 506(a) valuation. *In re Henry*, 457 B.R. 402, 405 (Bankr. E.D. Pa. 2011). Second, case law construing *Rash* does not support the Debtor's arguments regarding wholesale or trade-in value. Section 506(a)(2), which codified the *Rash* decision, provides as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. *With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.*

11 U.S.C. § 506(a)(2) (emphasis added). The record reflects that the Debtor's intended use is personal. With that in mind, the statute's definition of replacement value applies, meaning the car value should be the "price a retail merchant would charge for property of that kind considering the age and condition of the property ... ." *Id.*

Ally's NADA report reflects the retail value for the car. Furthermore, the NADA value provides the Court with a neutral and independent source for valuation, and importantly, assigns a value that is based on the perspective of a retail merchant. In contrast, the Debtor's appraisal appears to be the trade-in value that the dealership offered her. That standard, which the Debtor argues is a more appropriate measure because it "is more representative of the value that the Creditor would obtain should it foreclose on the [v]ehicle[,]" was plainly rejected in the *Rash* decision. *See Rash*, 520 U.S. at 956 ("Applying a foreclosure-value standard when the cram down option is invoked attributes no significance to the different consequences of the debtor's choice to surrender the property or retain it."). It also ignores the guidance outlined in § 506(a)(2).

Courts have routinely looked to NADA reports as an appropriate valuation method. *See, e.g.*, *In re Zambuto*, 437 B.R. 175, 177 (Bankr. D. N.J. 2010) ("the Court adopts the creditor's approach of starting with retail guides, specifically, the National Automobile Dealers Association ("NADA") Guide for retail value[.]"). However, the retail value acts as a starting point for valuation, and courts adjust that value to reflect the condition of the vehicle. *Id.*; *see also Rash*, 520 U.S. at 965 n.6 ("A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning.") (citation omitted). In this case, the Debtor's report credibly identifies $400 in exterior damage and $800 for reconditioning for retail.

As such, the Court will look to Ally's valuation as the appropriate starting point for the Debtor's vehicle, totaling $11,105. The Court will then deduct $1,200 for exterior damage and reconditioning costs, according to the Debtor's appraisal report. The appropriate value for the vehicle is $9,905.

    2. *Interest Rate*

The final issue is the interest rate. Ally argues that the rapid depreciation rate of vehicles warrants an adjustment rate of 3%. In this case, the prime rate is 4%, thus the adjusted rate should total 7%, according to Ally. The Debtor argues that a 1% increase is sufficient. In this case, Ally bears the burden of proof in arguing that the interest rate should be adjusted upwards. *Till v. SCS Credit Corp.*, 541 U.S. 465, 479 (2004).

Under *Till*,

> Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach ... requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of

Christopher J. Isaac, Esq.
Kristi J. Doughty, Esquire
May 16, 2018
Page 4

      course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan.

*Id.* "[T]he general consensus among courts is that a one to three percent adjustment to the prime rate is appropriate, with a 1.00% adjustment representing the low risk debtor and a 3.00% adjustment representing a high risk debtor ... ." *In re Pamplico Highway Dev.*, 468 B.R. 783, 794 (Bankr. D. S.C. 2012).

      After review, the Court finds that a 2% increase to the 4% prime rate is appropriate. The Court is not persuaded by Ally's arguments that a 3% adjustment is necessary due to a rapid depreciation rate of cars. The standard centers on the degree of risk that the debtor presents. Here, the record does not reflect that the Debtor is a high risk debtor meriting the highest adjustment. As such, the Court will approve a 2% adjustment to the prime rate, totaling 6%, or $1,584.48.

      *3. Conclusion*

      For the foregoing reasons, the Court finds that, for purposes of treatment under the Debtor's plan, the Debtor's Ford Fusion is valued at $9,905 with an adjusted interest rate at 6%, or $1,584.48. The total will be set at $11,489.48. The parties are requested to meet and confer to provide the Court with a form of order under certification within 14 days of this ruling.

      Very truly yours,

      Brendan Linehan Shannon
      Chief United States Bankruptcy Judge

cc:    Michael B. Joseph, Esq.